UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:25-cv-22644-GAYLES

ROBERTO CHAVEZ BARRIOS,

      Petitioner,

v.

GARRETT J. RIPA, Director of Miami Field
Office, U.S. Immigration and Customs
Enforcement; TODD LYONS, Acting Director,
U.S. Immigration and Customs Enforcement;
KRISTI NOEM, Secretary of U.S. Department
of Homeland Security, U.S. Department of
Homeland Security, U.S. Immigration and
Customs Enforcement,

      Respondents.

_____/

## ORDER

**THIS CAUSE** is before the Court on Petitioner Roberto Chavez Barrios' Emergency
Motion for Temporary Restraining Order (the "Motion"). [ECF No. 10-1]. The Court has reviewed
the Motion and the record and is otherwise fully advised. For the reasons set forth below, the
Motion is **DENIED**.

## BACKGROUND

This case concerns the detention and pending removal of Petitioner Roberto Chavez
Barrios ("Petitioner"), a Mexican national with an extensive history of illegal entries into the
United States and criminal convictions spanning from 2001 to 2018.[1] Petitioner's first documented
illegal entry into the United States occurred in or about July 2001. Based on his false claim of U.S.

---

[1] For purposes of brevity, the Court does not detail every instance of Petitioner's illegal entry and removal. *See* [ECF No. 19].

citizenship, Petitioner was charged in a criminal case with attempting to obtain entry into the United States by making false or misleading representations, pursuant to 8 U.S.C. § 1325(a)(3). After serving a 90-day sentence for that crime, Petitioner departed the United States.

In October 2003, officials from the Department of Homeland Security ("DHS") apprehended Petitioner when he tried to reenter the United States under a false name. Petitioner was issued an expedited removal order (the "2003 Removal Order") [ECF No. 19-5], and he was charged again under § 1325(a)(3). After serving a 30-day term of incarceration, Petitioner was removed from the United States. Between 2003 and 2018, Petitioner illegally re-entered the United States, and was subsequently removed, five more times.[2]

In 2018, DHS once again apprehended Petitioner in the United States. On the same date, Customs and Border Protection reinstated Petitioner's 2003 Removal Order. Petitioner was later convicted in a criminal case of reentry after a removal order, in violation of 8 U.S.C. §§ 1326(a) and (b)(1), and sentenced to 27 months' imprisonment. Following his term of imprisonment, in August 2020, U.S. Immigration and Customs Enforcement ("ICE") took Petitioner into custody. At that time, Petitioner expressed a fear of returning to Mexico due to his renunciation of his former gang.[3]

In March 2021, while Petitioner remained in ICE custody, an immigration judge ("ILJ") determined that Petitioner would likely be tortured if he was removed to Mexico. As a result, the ILJ deferred Petitioner's removal under the Convention Against Torture ("CAT"). DHS appealed the decision to the Board of Immigration Appeals ("BIA"). In November 2021, the BIA remanded

---

[2] DHS and Customs and Border Protection reinstated the 2003 Removal Order in 2012, 2015 (twice), 2016, 2017, and 2018. Some of these reinstatements occurred in conjunction with criminal investigations and convictions, including Petitioner's conviction for conspiring to transport aliens into the United States, in violation of 8 U.S.C. § 1324.

[3] The gang has a presence in Mexico and Texas. Gang members beat and stabbed Petitioner when he was removed to Mexico in 2018. In December 2021, ICE medical staff diagnosed Petitioner with post-traumatic stress disorder ("PTSD") stemming, in part, from his former gang assaulting him.

the case back to the ILJ to fully assess inconsistencies in Petitioner's testimony. In April 2022, the ILJ deferred Petitioner's removal to Mexico a second time. DHS appealed. In February 2023, the BIA remanded the case because the ILJ's decision lacked sufficient factual findings or analysis. In March 2025, the ILJ deferred Petitioner's removal to Mexico under CAT for a third time. DHS appealed. That appeal is pending.

On April 21, 2023, Petitioner was released from ICE custody under an Order of Supervision ("OSUP"). [ECF No. 19-34]. On June 11, 2025, during a routine check-in, ICE detained Petitioner and a deportation officer served him with a Notice of Revocation of Release ("Notice") of his OSUP.[4] *See* [ECF No. 20-2 ¶18, 30-1, 41-1 ¶4]. The Notice states, in pertinent part, that (1) Petitioner's supervision was revoked "based on a review of [Petitioner's] file and/or ICE has received a Travel Document to affect [his] removal", (2) "pursuant to 8 CFR 241.4, [Petitioner is] to remain in DHS/ICE custody", and (3) Petitioner would "promptly be afforded an informal interview" where he would "be given an opportunity to respond to the reasons for revocation." [ECF No. 30-1]. Petitioner was then transported to Krome Detention Center for removal.

On June 18, 2025, a deportation officer conducted an informal interview of Petitioner during which the officer informed Petitioner that DHS revoked his OSUP to effectuate his removal from the United States. [ECF No. 46-2]. Petitioner stated that he could not go to Mexico and asked where he would be sent. The officer responded that he did not know. The interview then

---

[4] Petitioner denies that he received the Notice. [ECF No. 29-1 ¶ 9]. However, he does state that, on the day he was detained, a supervisor, through an interpreter, told him in Spanish that the law had changed, and they could now send him to another country. *Id.* The Notice includes a certificate of service that documents the date and time of service, and that Petitioner refused to sign. [ECF No. 30-1]. In addition, the deportation officer who conducted Petitioner's informal interview states in his declaration that he provided Petitioner with a copy of the Notice during the interview. [ECF No. 46-2 ¶ 7]. The Notice was in English, and Petitioner, a Spanish speaker, states he cannot read documents in English. [ECF No. 30-1].

concluded.[5] *Id.* On June 27, 2025, an ICE officer informed Petitioner that ICE intended to remove him to Guatemala and showed him the Notice of Removal that stated the same.[6] [ECF Nos. 32-1, 34-1].

On June 11, 2025, Petitioner filed his Petition for Writ of Habeas Corpus and Complaint, [ECF No. 1], and the Motion, [ECF No. 10-1]. Petitioner argues that Respondents Garrett J. Ripa, Todd Lyons, Kristi Noem, DHS, and ICE (collectively "Respondents")[7] wrongfully revoked his OSUP and violated their own procedures in doing so, in violation of the due process guarantees of the Fifth Amendment, the Administrative Procedures Act ("APA"), the Immigration and Nationality Act ("INA"), and the Rehabilitation Act ("RA"). Petitioner asks the Court to (1) order his release from custody, (2) enjoin Respondents from transferring him out of the Southern District of Florida, and (3) enjoin his removal from the United States while DHS's appeal is pending before the BIA.

On June 12, 2025, the Court stayed Petitioner's transfer and removal pending Respondents' response to the Motion and a hearing.[8] The Court heard argument on June 30, 2025. On July 7, 2025, the Court ordered Respondents to file a notice with the Court detailing the circumstances of Petitioner's informal interview, identifying the official who signed the Notice, and explaining whether the official had the authority to do so. [ECF No. 39]. On July 11, 2025, Respondents filed their Notice Regarding Circumstances of Petitioner's Revocation of Release. [ECF No. 41].

---

[5] In his Declaration, Petitioner recounts a substantially similar exchange during his informal interview. He notes, however, that the interview was conducted in English, and he did not fully understand something the deportation officer said about "the president being able to send people to third countries[.]" [ECF No. 29-1 ¶ 20].
[6] The Notice of Removal was in English. [ECF No. 34-1].
[7] Garret Ripa is the Director of ICE's Miami Field Office; Todd Lyons is the Acting Director of U.S. Citizenship and Immigration Services; and Kristi Noem is Secretary of DHS.
[8] The Court has extended the stay until August 8, 2025. *See* [ECF Nos. 16, 25, 36, 48, 49, 50].

**LEGAL STANDARD**

To obtain a temporary restraining order, the Petitioner must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005). "The third and fourth factors merge when a party seeks an injunction against the government." *HM Fla.-ORL, LLC v. Gov. of Fla.*, 137 F.4th 1207, 1224 (11th Cir. 2025). "The issuance of a temporary restraining order . . . is an extraordinary remedy to be granted only under exceptional circumstances." *Day v. 21st Cent. Centennial Ins. Co.*, No. 8:14-CV-2048-T-36AEP, 2014 WL 12597030, at *1 (M.D. Fla. Sept. 22, 2014). "If a less drastic remedy . . . [i]s sufficient to redress [Petitioner's] injury, no recourse to the additional and extraordinary relief of an injunction [i]s warranted." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010). "Controlling precedent is clear that injunctive relief may not be granted unless the plaintiff establishes the substantial likelihood of success criterion." *Schiavo ex rel. Schindler*, 403 F.3d at 1226 (denying injunctive relief when movant did not establish first factor even if the other three factors were met).

**DISCUSSION**

**I.   Legal Framework**

It is undisputed that Petitioner illegally entered the United States and is the subject of a removal order. The primary disputes here are whether Respondents could legally revoke Petitioner's OSUP, detain him, and remove him, and whether they followed proper procedures to do so.

Pursuant to 8 U.S.C. § 1231(a), when an alien, like Petitioner, has been ordered removed, the Attorney General must remove the alien within a period of 90 days known as the "removal period".[9] However, if the alien "would not pose a danger to the community . . . or a significant risk of flight", 8 C.F.R. § 241.4(d)(1), or "there is no significant likelihood that the alien will be removed in the reasonably foreseeable future[,]" then the alien may be released under an OSUP. *Id*. § 241.13(g)(1).[10]

The government can revoke an OSUP for several reasons including when an alien violates his "conditions of release." *Id*. § 241.4(l)(1). When an OSUP is revoked under § 241.4(l)(1), the alien is entitled to notice "of the reasons for revocation" and an informal interview where the alien may "respond to the reasons for revocation." *Id*. § 241.4(l)(1). An OSUP may also be revoked when, "in the exercise of discretion" of the Executive Associate Commissioner or the district director, "[i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien[.]" *Id*. § 241.4(l)(2)(iii).[11] A district director may execute the revocation when it "is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." *Id*. Section 241.4(l)(2) does not mention affording the alien notice or an informal interview.

Finally, § 241.13(i) sets forth similar reasons for the revocation of an OSUP, including when the alien violates "the conditions of release", § 241.13(i)(1), and when "on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id*. § 241.13(i)(2). Section 241.13(i)(3)

---

[9] The Supreme Court has held that is "presumptively reasonable" to a hold an alien awaiting removal for up to six months. *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).

[10] The record is unclear as to whether Petitioner's OSUP was issued pursuant to § 241.4 or § 241.13.

[11] Commissioner refers to the Director of ICE. 8 C.F.R. § 1.2. The district director, "pursuant to delegation from the Secretary of Homeland Security or any successive re-delegation[,]" includes the Field Office Director or "other official . . . within U.S. Immigration and Customs Enforcement . . . who is delegated the function or authority." *Id*. § 1.2.

provides that the alien will receive notice of the reasons for revocation and "an informal interview . . . to respond to the reasons for revocation stated in the notification." *Id.* § 241.13(i)(3). Here, the Notice expressly states that the revocation is pursuant to § 241.4, and Respondents have represented to the Court that the revocation is pursuant to § 241.4(l)(2). [ECF No. 41-1].

## II.   **Jurisdiction**

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted). "A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises." *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1328 n.4 (11th Cir. 1999). Accordingly, before the Court can proceed, it must determine whether it has jurisdiction over this action. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1323 (11th Cir. 2012) ("Prior to making an adjudication on the merits, we must assure ourselves that we have jurisdiction to hear the case before us.").

Petitioner argues that the Court has federal question jurisdiction and that it may grant relief pursuant to the Suspension Clause of the United States Constitution, 28 U.S.C. § 1651 (All-Writs Act), 28 U.S.C. §§ 2201–02 (Declaratory Judgment Act), 28 U.S.C. § 2241 (habeas corpus), and 5 U.S.C. §§ 702, 706 (judicial review of agency actions). Respondents contend that 8 U.S.C. § 1252 strips the Court of jurisdiction to evaluate most of Petitioner's claims.[12]

### A.   INA Jurisdictional Limitations

Several provisions of the INA restrict the Court's jurisdiction to adjudicate certain decisions made by the Attorney General regarding removal. Section 1252—titled "Judicial review of orders of removal"—provides in pertinent part:

---

[12] Respondents have not contested the Court's jurisdiction to review whether the length of Petitioner's detention is constitutional or whether the BIA Appeal necessarily stays Petitioner's removal.

(B) Denials of discretionary relief

Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision . . . no court shall have jurisdiction to review . . . any other decision or action of the Attorney General . . . the authority for which is specified under this subchapter to be in the discretion of the Attorney General[.]

(g) Exclusive jurisdiction

Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General **to commence proceedings, adjudicate cases, or execute removal orders** against any alien under this chapter.

8 U.S.C. § 1252(a)(2)(B)(ii), (g) (emphasis added). The Supreme Court "narrow[ly] read[]" § 1252 and held that it does not encompass "all claims arising from deportation proceedings." *Reno v. Am-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 487 (1999). Rather, it only blocks courts from having jurisdiction over claims arising from three "discrete actions"—"to *commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Id.* at 482.

B.     Jurisdiction Over OSUP Revocation

Petitioner argues that Respondents (1) improperly revoked his OSUP and (2) even if the OSUP could be revoked, failed to follow their regulations in doing so. The Court finds that § 1252(g) deprives it of subject-matter jurisdiction over Respondents' decision to revoke the OSUP, but not their purported failure to comply with their own procedures in doing so. As detailed above, § 1252 deprives the Court of jurisdiction to hear claims arising from the Attorney General's decision to commence proceedings, adjudicate cases, or execute removal orders. *Id*. § 1252. The decision to revoke Petitioner's OSUP, for the stated purpose of executing his removal order, clearly

falls under the purview of § 1252(g). And, because the Attorney General has the discretion to revoke an OSUP,[13] § 1252(a)(2)(B)(ii) also bars review.

However, the Court does have jurisdiction to adjudicate whether Respondents complied with their own OSUP revocation procedures. The Eleventh Circuit has consistently held that even where the statutory framework grants agency discretion, courts have jurisdiction to review whether an agency adhered to its own regulations and procedures. *Kurapati v. U.S. Bureau of Citizenship and Immig. Services*, 775 F.3d 1255, 1262 (11th Cir. 2014) (finding that § 1252(a)(2)(B)(ii) did not prevent the Court from assessing whether the Government followed its procedures when it revoked Plaintiff's visa petition). *See also Gonzalez v. Reno*, 212 F.3d 1338, 1349 (11th Cir. 2000) ("[A]gencies must respect their own procedural rules and regulations . . . [and] the courts retain the authority to check . . . for procedural compliance."). Several district courts have applied this reasoning to cases involving OSUP revocations, finding a distinction between the decision to revoke an OSUP and a failure to follow procedures. *See Ceesay v. Kurzdorfer*, No. 25-CV-267-LJV, 2025 WL 1284720, *8 (W.D.N.Y. May 2, 2025) (holding that "district courts . . . have distinguished between challenges to ICE's discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal order, which are not."); *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 1895479, at *3–5 (S.D. Fla. July 8, 2025) (holding that § 1252(g) did not strip the Court of jurisdiction to evaluate whether the government complied with OSUP revocation procedures). Accordingly, the Court will address the likelihood of success on the merits of Petitioner's claim that Respondents failed to comply with their OSUP revocation procedures.

---

[13] *See* 8 C.F.R. § 241.4(l)(2) ("The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section.").

C.     Jurisdiction Over the Length of Detention

It is undisputed that the Court has jurisdiction to adjudicate "statutory and constitutional challenges to post-removal-period detention." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). *See also Lopez Pleitez v. Atty. Gen.*, No. 23-CV-20983, 2023 WL 3058007, *2 (S.D. Fla. Apr. 24, 2023) (same).

D.     Jurisdiction Over Rehabilitation Act Claim

Petitioner contends that, because he suffers from PTSD and depression, his re-detention violates the Rehabilitation Act. Based on this diagnosis, Petitioner asserts that detention would amount to an extreme condition of confinement and that there are less harsh alternatives available. Courts have jurisdiction to review conditions of confinement claims. *See Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018) (holding that it would be "absurd" to find that § 1252(b)(9) barred an individual from asserting a claim "based on allegedly inhumane conditions of confinement."). *See also Gayle v. Meade*, 614 F. Supp. 3d 1175, 1207 (S.D. Fla. 2020) ("ICE emphasizes that this Court lacks jurisdiction to review conditions of confinement . . . [t]he Court disagrees."). Therefore, this Court has jurisdiction to consider Petitioner's claim under the Rehabilitation Act.

E.     Jurisdiction Over Transfer out of the Southern District of Florida

Petitioner requests that the Court enjoin Respondents from transferring him to another district. Petitioner argues that his transfer would prejudice his case given that many facilities have barriers to "remote attorney access[.]" [ECF No. 10-1 at 8]. Petitioner states that his local counsel, key witnesses, and evidence regarding the alleged OSUP violations and his medical conditions are in this district. Finally, Petitioner argues that a transfer away from his support system would exacerbate his medical conditions and that is life would be at risk if he is transferred to a Texas facility.

The Court lacks subject matter jurisdiction to grant this relief.[14] As detailed above, § 1252(a)(2)(B)(ii) deprives courts of jurisdiction over "any decision or action of the Attorney General . . . the authority for which is specified under this subchapter to be in the discretion of the Attorney General . . . ." 8 U.S.C. § 1252(a)(2)(B). Section 1231(g)(1), which falls under the same subchapter, states: "[t]he Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." 8 U.S.C. § 1231(g)(1). Courts have interpreted these statutes to mean that a district court lacks jurisdiction to enjoin the government from transferring immigration detainees to other districts, as those decisions fall within the discretion of the Attorney General. *See, e.g., Calla-Collado v. Att'y Gen. of the U.S.,* 663 F.3d 680, 685 (3d Cir. 2011) (stating that Congress vested DHS and as a "part of DHS, ICE" "with [the] authority to enforce the nation's immigration laws" and "the authority to determine the location of detention of an alien in deportation proceedings . . . and therefore, to transfer aliens from one detention center to another"); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (finding that "[t]he Attorney General is mandated to 'arrange for appropriate places of detention for aliens detained pending removal.'" (citing 8 U.S.C. § 1231(g)(1)). This Court agrees that the determination of where to detain an alien to facilitate removal falls squarely within the discretion of the Attorney General.[15]

---

[14] Importantly, Petitioner does not assert that he would have no access to counsel if transferred. In that situation, the Court may be able to exercise jurisdiction. *See Calla-Collado v. Att'y Gen. of the U.S.*, 663 F.3d 680, 685 (3d Cir. 2011) ("An alien, however, does not have the right to be detained where he believes his ability to obtain representation and present evidence would be most effective." (citing *Gandarillas-Zambrana v. Bd. of Immigration Appeals*, 44 F.3d 1251, 1256 (4th Cir. 1995))). Similarly, the Court may have jurisdiction to enjoin Petitioner's transfer to a Texas facility, as Petitioner likely faces extreme danger there from his former gang. However, the government has not designated Petitioner for a transfer to Texas.

[15] Notably, § 1252(g) also divests the Court of subject-matter jurisdiction over Petitioner's request to enjoin transfer to another district. 8 U.S.C. § 1252(g); *see also Gupta v. McGahey*, 709 F.3d 1062, 1065 (11th Cir. 2013) (finding that "[s]ecuring an alien while awaiting a removal determination constitutes an action taken to commence proceedings").

In summary, the Court finds that it has jurisdiction to determine whether Respondents complied with their OSUP procedures and whether the length and conditions of Petitioner's detention are constitutional. However, the Court finds that it does not have jurisdiction over Respondents' decision to revoke Petitioner's OSUP or their determination of where to detain Petitioner.

**III.**   **Likelihood of Success on the Merits of Petitioner's Remaining Claims**

A.   <u>OSUP Procedures Claim</u>

The Court finds that Petitioner has not shown a substantial likelihood of success on the merits of his claim that his detention is unlawful because Respondents violated their OSUP revocation procedures.[16] Petitioner alleges that Respondents failed to comply with 8 C.F.R. §§ 241.4 and 241.13 because (1) he was not notified of the reasons for revocation, (2) he was not given a meaningful informal interview to respond to the reasons, and (3) the proper official did not sign his Notice.

1.   <u>Notice and Interview</u>

First, it does not appear that Petitioner was entitled notice or an informal interview under § 241.4. Respondents revoked Petitioner's OSUP to effectuate his removal pursuant to § 241.4(l)(2). As discussed above, the notice and interview requirements are only referenced in § 241.4(l)(1)—the OSUP revocation provision based on an alien's violation of his conditions of release—and not § 241.4(l)(2)—the OSUP revocation provision based on the discretion of a qualified official to enforce a removal order or to commence removal proceedings.

---

[16] As detailed above, the Court does not have jurisdiction to consider the propriety of Petitioner's OSUP revocation. Therefore, the Court does not consider Petitioner's argument that circumstances have not changed in such a way to warrant a revocation.

While § 241.13(i)(3)[17] suggests that Petitioner might be entitled to notice and an interview if the OSUP was revoked due to a changed circumstance—here, the government's ability to remove Petitioner to Guatemala—Petitioner still has not shown a likelihood of success on the merits of his claim.[18] This is because the record reflects that Petitioner was afforded notice of the revocation and an informal interview. On June 11, 2025, when Petitioner's OSUP was revoked, Petitioner was served with his Notice. [ECF No. 46-1]. The Notice states that Petitioner's OSUP was revoked "based on a review of [his] file and/or ICE has received a Travel Document to affect [his] removal." [ECF No. 30-1]. On June 18, 2025, Petitioner received an informal interview where he was informed that his revocation was being revoked to effectuate his removal. [ECF No. 46-2]. Petitioner was allowed to respond, and he inquired where he was being taken. *Id*. Finally, on June 27, 2025, an ICE officer informed Petitioner that ICE intended to remove him to Guatemala and showed him the Notice of Removal that stated the same. [ECF Nos. 32-1, 34-1].

Petitioner claims that he did not receive the Notice, his interview was insufficient, and that he could not read the Notice or the Notice of Removal and, therefore, Respondents did not follow their regulations. The Court finds that, based on the record before it, Petitioner has not demonstrated a substantial likelihood of success on the merits of this claim. First, the certificate of service for the Notice reflects that Petitioner received it. And, even if he did not receive a physical copy of it on that day, Petitioner acknowledges that an interpreter explained to him "that the law

---

[17] Section 241.13(b) provides that "Section 241.4 shall continue to govern the detention of aliens under a final order of removal, including aliens who have requested a review of the likelihood of their removal under this section, unless the Service makes a determination under this section that there is no significant likelihood of removal in the reasonably foreseeable future. The Service may release an alien under an order of supervision under § 241.4 if it determines that the alien would not pose a danger to the public or a risk of flight, without regard to the likelihood of the alien's removal in the reasonably foreseeable future." 8 U.S.C. § 241.13(b)(1).

[18] In addition, the Notice, [ECF No. 30-1], does afford these rights. It states, "This letter is to inform you that your order of supervision has been revoked and you will be detained in the custody of U.S Immigrations and Customs Enforcement (ICE) at this time. This decision has been made based on a review of your file and/or ICE has received a Travel Document to affect your removal . . . [y]ou will promptly be afforded an informal interview at which you will be given an opportunity to respond to reasons for revocation." *Id*.

had changed[,] and [ICE] could now send [him] to another country." [ECF No. 29-1]. Moreover, Petitioner does not dispute that he received an informal interview, and, based on his affidavit, he understood that he was being removed. Finally, on June 27, 2025, an ICE officer informed Petitioner that ICE intended to remove him to Guatemala and showed Petitioner a Notice of Removal that stated the same. [ECF Nos. 32-1, 34-1]. Based on these facts, the Court finds that Respondents likely complied with their own regulations.

2.   Signing Official

The Executive Commissioner or district director must authorize the revocation of an OSUP pursuant to § 241.4(l)(2). *See id.* § 241.4(l)(2). Petitioner argues that the appropriate official did not sign his OSUP revocation and that, therefore, it is invalid. The district director includes the Field Office Director or "other official . . . who is delegated the function or authority." 8 C.F.R. § 1.2. Respondents submit the "Delegation of Signature Authority" to demonstrate that signature authority has been delegated from the Deputy Assistant Director to the Field Office Director. [ECF No. 41-2]. That Delegation provides that the Field Office Director delegates the ability to sign a Notice of Revocation of Release to the Supervisory Deportation and Detention Officer ("SDDO"). *Id.* As set forth in Respondents' Notice Regarding Circumstances of Petitioner's Revocation of Release, the SDDO signed Petitioner's Notice. [ECF No. 46-1].

Petitioner argues that the Deputy Assistant Director does not have the power under § 241.4(l)(2) to delegate signature authority. In addition, Petitioner contends that the Field Office Director was required to decide—and express in writing—that the revocation was in the public interest and that the revocation could not be referred to the Executive Associate Director. [ECF No. 45 at 2-3]. The Court disagrees.

14

Courts are "disinclined to interfere with the discretion delegated to those charged with enforcing immigration laws." *Goldovsk v. U.S. Citizenship & Immigr. Servs.*, No. 07-CV-21342-PCH, 2007 WL 9702722, at *1 (S.D. Fla. Sept. 28, 2007). The Court is unaware of any authority that requires Respondents to publicly document every time an official delegates authority to another official. Finally, the relevant regulation does not mandate that the revoking official explicitly state in the Notice of Revocation of Release that the revocation was in the public interest and that the matter could not be referred to the Executive Associate Commissioner. Rather, the official must simply take that into consideration. Therefore, Petitioner is unlikely to succeed on the merits of his claim that his OSUP revocation was procedurally deficient.[19]

Even if Petitioner could establish that Respondents violated their OSUP revocation procedures, the Court finds that Petitioner's release from detention, or a stay of removal, would not be appropriate.[20] A temporary restraining order is not warranted when there are less drastic remedies available. *Monsanto Co.*, 561 U.S. at 165–66. Respondents state that Petitioner is "a flight risk by virtue of the fact that he has entered the country illegally" multiple times and Petitioner "has an extensive criminal record." [ECF No. 21 at 21]. Furthermore, 8 C.F.R. § 241.4(f), states that whether an "alien is a significant flight risk or may abscond to avoid removal" is a factor that should be considered when recommending whether an alien should be detained or released. Considering Petitioner's history, a release from detention would be too drastic

---

[19] Petitioner proffers two district court cases to demonstrate that he should be released based upon improper signature. However, both cases are distinguishable. In *Ceesay v. Kurzdorfer*, Petitioner was released because "there [was] no delegation order clearly giving [the official] the authority to revoke release[.]" No. 25-CV-267-LJV, 2025 WL 1284720, at *17 (W.D.N.Y. May 2, 2025). Here, the SDDO was explicitly given the authority to revoke Petitioner's OSUP. Even if Respondents' OSUP revocation was procedurally deficient, the plaintiff in *Ceesay*, unlike Petitioner, was a 63-year-old man with a history of heart attacks who was not identified as a flight risk. *See generally id.*; *infra* (III)(A)(2). Similarly, in *Rombot v. Souza*, the petitioner was never considered to be "a flight risk[.]" 296 F. Supp. 3d 383, 388 (D. Mass. 2017). Thus, these cases are not persuasive to the Court.

[20] Although Respondents maintain that Petitioner was provided with the Notice and an informal interview, Petitioner questions the veracity of Respondents' statements that Petitioner was served the Notice and the meaningfulness of Petitioner's informal interview. [ECF Nos. 29, 46-1, 46-2].

a remedy for a procedural violation. Instead, the Court could order Respondents to provide Petitioner with a new Notice signed by the appropriate official and afford Petitioner a more robust interview.[21] In any event, Petitioner has not established a likelihood of success on the merits of a claim that would mandate his release from detention.

    B.    *Zadvydas* Claim

    In *Zadvydas*, the Supreme Court found that it is "presumptively reasonable" to detain an alien awaiting removal for up to six months. 533 U.S. at 701. "After the 6-month period, once an alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must furnish evidence sufficient to rebut that showing." *Id.* at 680. Petitioner argues that his detention violates the rule set forth in *Zadvydas*.

    The Court finds Petitioner's *Zadvydas* claim is premature. Petitioner has been detained since June 11, 2025—a period significantly less than the "presumptively reasonable" 6-month period set by the Supreme Court. *Zadvydas*, 533 U.S. at 701. Petitioner argues that his detention should be counted in the aggregate based upon his prior detentions. However, if the Court counted detentions in the aggregate, any subsequent period of detention, even one day, would raise constitutional concerns. And adjudicating the constitutionality of every re-detention would obstruct an area that is in the discretion of the Attorney General—effectuating removals. *See* 8 U.S.C. § 1252(g). The Court is not alone in reaching this conclusion. *See Meskini v. Att'y Gen. of United States*, No. 4:14-CV-42-CDL, 2018 WL 1321576, at *4 (M.D. Ga. Mar. 14, 2018) (finding that *Zadvydas* is not a "Get Out of Jail Free Card that may be redeemed at any time just because an alien was detained too long in the past." (internal quotation omitted)).

---

[21] The Court could also require Respondents to provide Petitioner with a Spanish translation of his Notice or conduct a new informal interview with a translator present.

16

Finally, individuals like Petitioner who have previously been removed and are subject to a reinstated removal order "are not entitled to a bond hearing" for release. *Johnson v. Guzman Chavez*, 594 U.S. 523, 526 (2021). As a result, even if Petitioner could demonstrate that he has been held longer than an aggregate of six months, he is not entitled to a hearing for release. Thus, Petitioner has not shown a substantial likelihood of success on the merits of his *Zadvydas* claim.

C.     The Rehabilitation Act

Petitioner argues that, in detaining him, Respondents failed to reasonably accommodate his PTSD. However, the Rehabilitation Act does "not require an institution . . . to effect substantial modifications of standards to accommodate a handicapped person." *Pritchard v. Fla. High Sch. Athletic Ass'n, Inc.*, 371 F. Supp. 3d 1081, 1086 (M.D. Fla. 2019) (internal quotation omitted). "Accommodations are not reasonable if they impose . . . administrative burdens, or if they require a fundamental alteration [to] the nature of [the] program." *Id*. at 1087 (internal quotation omitted). Releasing Petitioner from ICE custody would be both an administrative burden and a fundamental alteration to how Respondents effectuate removals (i.e. detention before removal). *See Carlson v. Landon,* 342 U.S. 524, 538 (1952) ("Detention is necessarily a part of . . . deportation procedure."). Furthermore, Petitioner is a flight risk and, as a result, release is not a viable accommodation in his case. *See supra* (III)(A)(2). Accordingly, Petitioner has not established a likelihood of success on the merits of his Rehabilitation Act claim.

D.     Stay of Removal Pending Appeal

Petitioner argues that 8 C.F.R. § 1003.6 stays his removal while DHS's BIA Appeal is pending. The Court disagrees. Section 1003.6 states, "the decision in any proceeding . . . from which an appeal to the Board may be taken shall not be executed . . . while an appeal is pending . . . before the Board." The issue raised on appeal is the ILJ's deferral of Petitioner's removal to

Mexico. [ECF No. 21 at 9]. Thus, while the appeal is pending, § 1003.6 prohibits Respondents from removing Petitioner to Mexico. The ILJ's decision and corresponding appeal, however, have no bearing on Petitioner's removal to a country other than Mexico, and the plain language of the regulation does not necessitate that Petitioner remains in the United States.

Indeed, "[i]f an alien is granted withholding-only relief, DHS may not remove the alien to the country designated in the removal order . . . . But because withholding of removal is a form of country specific relief . . . nothing prevents DHS from removing [the] alien to a third country[.]" *Johnson v. Guzman Chavez*, 594 U.S. 523, 531–32 (2021) (internal quotation omitted). And "the finality of the order of removal does not depend in any way on the outcome of the withholding-only proceedings." *Id*. at 539. As Petitioner was only granted deferral of removal to Mexico and not a third country, the pending BIA appeal does not affect the finality of his removal order. Because Respondents may remove Petitioner to a third country, Petitioner has not established a likelihood of success on the merits of his request for a stay pending the BIA appeal.

**IV.    Remaining Factors**

Based on the foregoing, the Court finds that Petitioner has not demonstrated a substantial likelihood of success on the merits on his claims. Therefore, the Court need not consider the remaining factors for a temporary restraining order. "Controlling precedent is clear that injunctive relief may not be granted unless the plaintiff establishes the substantial likelihood of success criterion." *Schiavo*, 403 F.3d at 1226; *ACLU of Fla., Inc. v. Miami–Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009) ("Failure to show any of the four factors is fatal, and the most common failure is not showing a substantial likelihood of success on the merits.").

**CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Petitioner's

Emergency Motion for Temporary Restraining Order (the "Motion"), [ECF No. 10-1], is

**DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 8th day of August 2025.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE